IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Raymond Chabert, et. al., ) | |
| ) | |
| Plaintiffs, ) | **ORDER DENYING DEFENDANT** |
| ) | **BIG3 PROPERTY, LLC'S MOTION** |
| vs. ) | **TO DISMISS AMENDED** |
| ) | **COMPLAINT FOR LACK OF** |
| Michael Francois Bujaldon, VM ) | **PERSONAL JURISDICTION** |
| Invest LLC, Big3 Property LLC, and ) | |
| JMI IMMO Invest LLC ) | |
| ) | Case No. 1:16-cv-293 |
| Defendants. ) | |

Before the Court is "Defendant Big3 Property, LLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and Request for Oral Argument" filed on February 3, 2017. See Docket No. 63. For the reasons set forth below, the motion is denied.

I. **BACKGROUND**

The Plaintiffs filed this action in the wake of proceedings filed against North Dakota Developments, LLC ("NDD"), Robert Gavin, Daniel Hogan, and relief Defendants by the United States Securities and Exchange Commission, alleging NDD, Gavin, and Hogan fraudulently raised more than $62 million from investors through the sale of interests in North Dakota man camps. See Case No. 4:15-cv-053 (D.N.D. May 5, 2015). In their amended complaint, the Plaintiffs allege Michael Francois Bujaldon; VM Invest, LLC; JMI IMMO Invest, LLC; and Big3 Property, LLC (collectively referred to as "Defendants") actively assisted NDD in offering and selling, unregistered, nonexempt, and fraudulent securities from May 2012 to April 2015. See Docket No. 61, p. 1. Specifically, the Plaintiffs allege claims against Defendants for violations of Section 12(a)(2) of the Securities Act of 1933 (15 U.S.C. § 771(a)(2)) as well as violations of N.D.C.C. §

1

10-04-17 by offering and selling unregistered securities and selling securities as an unlicensed agent.

In their amended complaint, the Plaintiffs allege the Defendants communicated with North Dakota-based agents of NDD, traveled to North Dakota to meet with NDD, urged investors to purchase "North Dakota-issued securities," directed NDD investors to send paperwork related to their investment to agents of NDD who were located in North Dakota, and received sales commissions from investor funds wired to North Dakota. See Docket No. 61, pp. 3-4. Further, the Plaintiffs specifically allege this Court has jurisdiction over all Defendants because they

> actively recruited investors to invest in a North Dakota company; brokered the sale of interests in North Dakota real property and of North Dakota-issued securities; received fraudulent offering documents from North Dakota and directed communications to North Dakota, pertaining to their fraudulent sales of NDD securities; received commissions from North Dakota in connection with their sales; directed investor funds and investment-related paperwork to be sent to a North Dakota law firm in connection with the sales; and, acted as a necessary intermediary in connection with a fraud emanating from North Dakota.

See Docket No. 61, p. 5. According to the amended complaint, the Defendant Big3 Property, LLC ("Big3 Property") is a Michigan limited liability company with its principal place of business in Detroit, Michigan, with Defendant Bujaldon as a member. Id. at p. 9. Bujaldon "conducted extensive business and engaged in numerous communications with North Dakota entities, and traveled to North Dakota, in connection with his sale of NDD securities to Plaintiffs and others." Id. at p. 8.

In response to the Plaintiff's amended complaint, Big3 Property filed a motion to dismiss for lack of personal jurisdiction. See Docket No. 63. In its brief in support of its motion, Big3 Property contends it has had no contact with North Dakota and any action of Bujaldon relating to the sale or solicitation of the unregistered, fraudulent securities on behalf of NDD was outside the scope of Bujaldon's agency with Big3 Property.

2

## II. LEGAL DISCUSSION

### A. RULE 12(b)(2)

In its memorandum in support of its motion to dismiss, Big3 Property contends the Court lacks personal jurisdiction over it and the claims against Big3 Property should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. To defeat a motion to dismiss for lack of personal jurisdiction, the Plaintiffs need only establish a prima facie showing of personal jurisdiction over Big3 Property. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). The Plaintiffs' prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish that a court has in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647.

This Court may properly exercise personal jurisdiction over a party if a two-step inquiry is satisfied. First, the party must be "amenable to service of process under the appropriate long-arm statute." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Second, the party challenging personal jurisdiction must have engaged in activities which satisfy the minimum contacts requirement of the Due Process Clause. Id. The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223. The Eighth Circuit Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest

extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).

"Due Process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A non-resident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps, 327 F.3d at 648. There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum: general jurisdiction and specific jurisdiction. With respect to general personal jurisdiction over a defendant, "a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." Id. A state has specific personal jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson, 444 F.3d at 956.

The Eighth Circuit has established a five-factor test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant:

> (1) the nature and quality of a defendants' contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Dever, 380 F.3d at 1073-74. In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algoddoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). However, the Eighth Circuit directs courts to give "significant weight" to the first three factors. Romak USA,

4

Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004). The Eighth Circuit's five-part test essentially "blends" the tests for general and specific jurisdiction. See Northrup King Co., 51 F.3d at 1388.

Under the test outlined above, the Plaintiffs have the burden of proving facts to support personal jurisdiction. Dever, 380 F.3d at 1072. The Plaintiffs need not prove personal jurisdiction by a preponderance of the evidence until a court holds an evidentiary hearing or until trial. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Absent a hearing, the Court will consider the facts in the light most favorable to the non-moving party and resolve all conflicts in favor of that party. Romak USA, Inc., v. Rich, 383 F.3d at 983-84.

Here, Big3 Property contends the Court lacks jurisdiction over it because Big3 Property has essentially had no contact with the forum state of North Dakota. However, applying the five-factor test for minimum contacts to Big3 Property, the Court concludes it has personal jurisdiction over Big3 Property.

### a) NATURE AND QUALITY OF CONTACTS

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1992). The claims against Big3 Property are premised upon the Plaintiffs' allegation Big3 Property was an alter ego of Bujaldon, or alternatively, Bujaldon acted as an agent for Big3 Property when he solicited investors and sold unregistered, fraudulent securities in conjunction with NDD. To determine whether Bujaldon was authorized to act on behalf of Big3 Property in his dealings with NDD, the Court is required to review the interactions of Big3 Property, Bujaldon, and the Plaintiffs. Because these interactions similarly define the scope of this Court's jurisdiction,

5

the Court's analyzes Bujaldon's authority and the boundaries of the Court's jurisdiction concurrently.

The affidavits in support of its motion demonstrate Big3 Property is owned equally by Olivier Claeys, Bujaldon, and Pierre LeBlanc. See Docket No. 59. Big3 Property was formed for the purpose of selling residential real estate investment property located in Detroit, Michigan, to European investors. Id. According to affidavits, Big3 Property has not sent electronic communications or mailings to residents of North Dakota, and Big3 Property does not have any property, bank accounts, or assets in North Dakota. Id. Contrary to the allegations of the complaint, both Claeys and LeBlanc, in their affidavits, attest that Big3 Property did not receive any commissions related to the sale of NDD securities.

In response to the motion to dismiss for lack of jurisdiction, the Plaintiffs submit that Big3 Property's active promotion and facilitation of NDD investment opportunities imparts this Court with jurisdiction over Big3 Property. According to the Plaintiffs, Big3 Property's promotion and facilitation of the NDD investment opportunity occurred through Bujaldon's travels to North Dakota, Bujaldon's use of Big3 Property's name, contact information, and logo, as well as postings on Big3 Property's Facebook page. The Court thoroughly reviewed screenshots of Big3 Property's Facebook page, numerous emails sent to Plaintiffs from Bujaldon, an archive of NorthDakotaDevelopment.fr website, as well as screenshots of Bujaldon's personal Facebook page.

From July of 2014 to November of 2014, Big3 Property, through its Facebook page, posted or shared links to or photos of NDD's investment opportunities in North Dakota roughly twelve times.[1] See Docket Nos. 67-1, pp. 10-30, and 67-2. Big3 Property would sometimes "share"

---

[1] It appears to the Court that one posting on Big3 Property's Facebook page shared Bujaldon's video relating to NDD offerings in Montana. See Docket No. 67-2, p. 2.

6

Bujaldon's photos or posts about NDD investment opportunities, or share links "via International immobilier." On September 25, 2014, Big3 Property simply posted on its Facebook page: "North Dakota receive the latest offers, prices and the payment procedure by clicking on the link below." See Docket No. 67-2, p. 3. On several occasions, Big3 Property "shared" Bujaldon's photo, which depicted a female operator, a French telephone number (+33 (0)1 46 91 89 16), a North Dakota telephone number (+1 701 369-0683), Big3 Property, and the phrase "Nous contacter." Another similar post sharing Bujaldon's photo that listed the French and North Dakota telephone numbers with the words: "DETROIT: www.big3property.com DAKOTA DE NORD: www.northdakotadevelopment.fr" and the phrase "Nous contacter," but did not identify Big3 Property as a partner. See Docket No. 67-2, p. 10. Still, other posts show Detroit real estate investments that include Big3 Property's logo with the same North Dakota telephone number mentioned in Bujaldon's photo.

The Court also reviewed dozens of emails sent from Bujaldon to investors. See Docket Nos. 67-4, 67-5, 67-6, and 67-7. These email communications relate to the sale or solicitation of unregistered, fraudulent securities. In those emails sent to and between Jean-Claude Jacquet from Bujaldon, none were sent from Bujaldon's Big3 Property email account, but the emails contained the following statement:

"Nos partenaires: www.jmimmo.fr / www.big3property.com / www.northdakotadevelopment.fr" See Docket No. 67-5. The same statement was included in emails below the logo/letterhead for VM Invest LLC and NorthDakotaDevelopments.fr website. Id. at pp. 9-10. Also, throughout Bujaldon's email correspondence with Jacquet, the same North Dakota telephone number is associated with International JMI IMMO, Big3 Property, VM Invest LLC, and NorthDakotaDevelopments.fr. Id.

7

For email correspondence to and between Stephane Perrotte from Bujaldon, several emails were sent to Perrotte from Bujaldon's Big3 Property email account (michael@big3property.com). Some of the signatures blocks of the emails listed only Bujaldon's Big3 Property email address, and other emails listed Bujaldon's email address with JMI IMMO. Id. One email contained the same "Nos partenaires" statement beneath VM Invest LLC logo/letterhead. See Docket No. 67-6, p. 5.

In emails from Bujaldon to Pierre Thuiller one email was sent from Bujaldon's Big3 Property email and the signature block of one email listed Bujaldon's Big3 Property email address and Bujaldon's email address with JMI IMMO. See Docket No. 67-7. Big3 Property, along with a North Dakota telephone number, is also listed as a "Mentions legales" in one email sent from a JMI IMMO email account. Throughout Bujaldon's email communications with Thierry Dutheil, Bujaldon sent all emails from his Big3 Property email and his signature block includes a North Dakota telephone number. See Docket No. 67-4.

Much of the contact that the Plaintiffs contend imparts this Court with jurisdiction over Big3 Property is attributable to actions of Bujaldon. Consequently, the Court must determine whether Bujaldon was acting as an agent of Big3 Property such that the Court can exercise jurisdiction over Big3 Property in this case. In North Dakota, an agency relationship is either actual or ostensible. Alerus Fin., N.A. v. W. State Bank, 2008 ND 104, ¶ 40. It is actual when the agent really is employed by the principal. It is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent, who really is not employed by the principal. N.D.C.C. § 3-01-03. "A principal is bound by acts of the principal's agent under a merely ostensible authority to those persons only who in good faith and

8

without ordinary negligence have incurred a liability or parted with value upon the faith thereof." N.D.C.C. § 3-03-03.

At this stage, viewing the facts in the light most favorable to the Plaintiffs, the Court finds Bujaldon's use of a Big3 Property email account, alongside with other email accounts, to communicate with Plaintiffs, and the consistent use of the same North Dakota telephone number in connection with Big3 Property as well as International JMI IMMO, VM Invest LLC, and NorthDakotaDevelopments.fr in combination with the activity of posting on Big3 Property's Facebook page, all create a reasonable impression Bujaldon was acting as an agent for Big3 Property. As mentioned above, the Court thoroughly reviewed Big3 Property's Facebook page, numerous emails sent to Plaintiffs from Bujaldon, an archive of NorthDakotaDevelopment.fr. After reviewing these materials the Court is left with the firm belief a third party interacting with Bujaldon may not be able to distinguish Bujaldon's actions on behalf of NorthDakotaDevelopments.fr, JMI IMMO, VM Invest LLC, and Big3 Property. Of particular importance is the extensive co-mingling of Bujaldon's communication forums between NorthDakotaDevelopments.fr, JMI IMMO, VM Invest LLC, and Big3 Property, with reference to other entities in the signature block.

The Plaintiffs sufficiently demonstrated Big3 Property's representations could cause a third party to believe Bujaldon was its agent. The Court is also of the opinion the Plaintiffs' declarations and supporting documentation demonstrate Bujaldon may have even had actual authority from Big3 Property to post on its Facebook page and use the same North Dakota telephone number in connection with business for Big3 Property International JMI IMMO, VM Invest LLC, and NorthDakota Developments.fr. Consequently, for the purposes of establishing jurisdiction over

Big3 Property, the Court finds Big3 Property is bound by the acts of Bujaldon. See N.D.C.C. § 3-03-03.

Neither party disputes that Bujaldon traveled to North Dakota to facilitate business with NDD. Through its Facebook page, Bujaldon and Big3 Property also promoted the NDD investment opportunity related to real property located in North Dakota. Bujaldon utilized a North Dakota telephone number in his promotion of the NDD real estate investments, and the telephone number was well associated with Big3 Property. Bujaldon communicated the NDD investment opportunity related to real property in North Dakota to potential investors by email, including communication through a Big3 Property email address. Although none of the Plaintiffs in this action were located in North Dakota and Bujaldon's communicationa were not specifically directed at North Dakota residents, the Court finds Big3 Property, by and through Bujaldon, availed itself of this Court's jurisdiction as it actively sought to benefit from North Dakota's then-booming economy. Email communications by Bujaldon related to the formation of North Dakota limited liability companies to facilitate investment in North Dakota real estate. Big3 Property's contact with North Dakota is not random, fortuitous, and attenuated. The nature and quality of these contacts support the exercise of personal jurisdiction over Big3 Property.

   **b)**   **QUANTITY OF CONTACTS**

Quantity is a consideration when general jurisdiction is alleged. Lakin v. Prudential Sec, Inc., 348 F.3d 704, 712 (8th Cir. 2003). It is well-established that specific jurisdiction can arise from a single contact with the forum state. Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973). Bujaldon's travel to North Dakota to facilitate business with NDD satisfies the single contact needed to give rise to personal jurisdiction over Big3 Property under

the principle of ostensible authority. Moreover, Big3 Property's contact with Plaintiffs, by and through Bujaldon, to establish North Dakota limited liability companies for the purpose of purchasing North Dakota 'real estate' more than satisfies the quantity of contacts needed to support personal jurisdiction. See Docket Nos. 67-4 and 67-6.

### c) RELATION OF CONTACTS TO CAUSE OF ACTION

Defendant Big3 Property's contact with North Dakota directly relates to this cause of action. The Plaintiffs allege Big3 Property is liable for the actions of Bujaldon in soliciting for sale and the actual sale of unregistered, fraudulent North Dakota securities, related to North Dakota real estate. The Plaintiffs further allege:

> 100. Defendants instructed Plaintiffs that, in order to invest, Plaintiffs must transfer their investment proceeds to North Dakota; send their investment-related paperwork to North Dakota; and communicate with the escrow agent in North Dakota regarding their investments.
>
> 101. Plaintiffs, in reliance upon Defendants' fraudulent misrepresentations and omissions, invested in the unregistered and fraudulent NDD securities.
>
> 102. Defendants assisted Plaintiffs with the investment-related paperwork and directed such paperwork to be sent to North Dakota.
>
> 103. Defendants also assisted Plaintiffs in transferring their funds to North Dakota and communicated with North Dakota-based NDD agents to facilitate Plaintiffs' investments.

See Docket No. 61, p. 21. These actions form the base of the Plaintiffs' claims against Big3 Property and were directed at North Dakota. Consequently, the Court finds it has jurisdiction over Big3 Property to adjudicate claims arising out of the sale or solicitation of unregistered North Dakota securities related to real property located in North Dakota.

### d) **INTEREST OF THE FORUM STATE AND CONVENIENCE OF THE PARTIES**

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003). The fourth factor is the interest in the forum state in adjudicating the cause of action. The Court finds it is in the interests of North Dakota to adjudicate the sale of unregistered, fraudulent securities tied to real property located in North Dakota. The Plaintiffs' claims relate to the regulation of securities in North Dakota and to the disposition of real property within North Dakota. These specific claims are local in nature. Therefore, the interest of North Dakota in adjudicating these claims is heightened

The fifth factor pertains to the convenience of the parties. The Court finds that, although none of the parties are residents of North Dakota, the State would be a convenient forum for this dispute because the property related to the sale of unregistered, fraudulent securities is located in North Dakota. Moreover, much of the activity related to the sale or solicitation of unregistered, fraudulent securities. Therefore, this factor weighs in favor of exercising personal jurisdiction, but as stated above, the last two factors are of secondary importance. See Stanton, 340 F.3d at 694; Northrup King Co, 51 F.3d at 1388. Based on Big3 Property's contacts with North Dakota, and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over the Defendant would not violate due process. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. The Plaintiffs have sustained their burden of proof, and established the Court's in personam jurisdiction. The Court finds it possesses personal jurisdiction over Big3 Property.

## III. CONCLUSION

The Court has carefully considered the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, the Court **DENIES** "Defendant Big3 Property, LLC's Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and Request for Oral Argument" (Docket No. 63). The Court also **FINDS AS MOOT** "Defendant Big3 Property, LLC's Motion to Dismiss for Lack of Personal Jurisdiction and Request for Oral Argument" (Docket No. 57) and Big3 Property's motion for a hearing (Docket No. 66).

**IT IS SO ORDERED.**

Dated this 1st day of November, 2017.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court